## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

SHERI SPEER,
    *Plaintiff*,

    v.                                No. 3:23-cv-192 (JAM)

SELECT PORTFOLIO SERVICING *et al.*,
    *Defendants*.

### ORDER GRANTING MOTION TO DISMISS

In 2007, the plaintiff in this lawsuit took out a mortgage on her house. In January 2023, the current assignee of the mortgage initiated foreclosure proceedings against the plaintiff in state court. Around the same time, the plaintiff brought this action in state court seeking relief against the mortgage assignee, the mortgage assignor, and the mortgage servicer. The defendants removed the plaintiff's action to federal court and then moved to dismiss. I conclude that most of the plaintiff's claims are time-barred and that none of them plausibly state a claim for relief. Accordingly, I will grant the defendants' motion to dismiss.

### BACKGROUND

Plaintiff Sheri Speer has filed this action against three defendants: Select Portfolio Servicing, Inc. ("SPS"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and Deutsche Bank National Trust Company ("Deutsche Bank"). I will describe below the allegations of her complaint as supplemented by documents filed by the defendants that are referenced by or otherwise integral to the allegations of the complaint.

Speer alleges that she owns property at 391 Deepwood Drive in Lebanon, Connecticut.[1] She alleges that the property is subject to a mortgage and that she seeks a declaratory judgment "as to: (a) the validity of the Mortgage and Lien related to her property and (b) to seek and

---

[1] Doc. #1-1 at 2 (¶ 1).

ascertain who is the Holder of the Note and the Party with right and standing to foreclose, and to who is otherwise entitled to payments under the Note."[2]

The defendants have attached to their motion to dismiss certain documents describing the mortgage. These documents show that Speer signed a note in 2007 for a $204,000 loan from IMPAC Funding Corporation ("IMPAC"), and this note was secured by a mortgage on the property at 391 Deepwood Drive.[3]

According to the complaint, MERS "filed an assignment of mortgage" for the property.[4] The defendants have filed a copy of this assignment showing that in 2009 MERS acted as IMPAC's nominee and assigned the mortgage to Deutsche Bank as Trustee for IMPAC Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-2.[5]

Speer alleges that this assignment by MERS in 2009 was "void" because "[p]er CGS §35-1, no corporation may operate under a trade name" and because MERS "dissolved in 2005."[6] Speer also alleges that "no notice was provided as to Mortgage Electronic Registration Systems, Inc's transfer," which allegedly violated a federal a statute stating that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person."[7] 12 U.S.C. § 2605(b)(1).

Speer next alleges that in October 2022 she propounded 33 qualified written requests ("QWRs") to SPS.[8] A QWR is defined by federal law to mean "written correspondence" made to a loan servicer that "includes a statement of the reasons for the belief of the borrower, to the

---

[2] *Ibid.* (¶ 1).
[3] Doc. #15-2 (note); Doc. #15-3 (mortgage deed). The date on the mortgage deed—March 12, 2007—matches the date of the mortgage as alleged in the complaint. *Compare* Doc. #1-1 at 5 (¶ 11) with Doc. #15-3 at 2.
[4] Doc. #1-1 at 3 (¶ 4).
[5] Doc. #15-3 at 2; Doc. #15-4 at 2.
[6] Doc. #1-1 at 3 (¶¶ 5–6).
[7] *Id.* at 6 (¶ 14).
[8] *Id.* at 3–4 (¶ 7).

extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."12 U.S.C. § 2605(e)(1)(B). Speer does not describe the 33 QWRs except to say that she "sought to ascertain the actual location of the Original Note and its custodian of record."[9] According to Speer, SPS did not properly respond to her QWRs but instead "lump[ed]" all 33 QWRs into a single "request for lien validation."[10]

The complaint also includes allegations to the effect that Speer does not know who has the right to enforce her debt and the mortgage on her property. On the one hand, the complaint alleges that SPS "claims to be owed payments and to be the Holder of the Note" and "to have the right to foreclose a mortgage" on Speer's property.[11] To support this allegation, the complaint references a communication Speer received from SPS in December 2022.[12] The defendants have filed a copy of this communication dated December 22, 2022, in which SPS states that it was "the mortgage servicer on the above referenced account" involving the property at 391 Deepwood Drive, that SPS understood that "your obligation has been discharged in a bankruptcy order," but that "[e]ven though your personal liability on the note may be discharged, the terms of the mortgage remain in effect" and that "SPS has referred your account for legal action," although advising that "you may still be able to avoid foreclosure."[13]

On the other hand, the complaint alleges that Deutsche Bank "claims, simultaneous to the first Defendant [SPS], to be owed payments and to be the Holder of the Note," having "made its demand, also during December of 2022."[14] The defendants have filed a copy of this demand, which is a letter from the law firm of Bendett & McHugh, P.C. stating that "[w]e are trying to

---

[9] *Ibid.* (¶ 7).
[10] *Id.* at 4 (¶ 7).
[11] *Id.* at 2 (¶ 2).
[12] *Ibid.* (¶ 2).
[13] Doc. #15-5 at 2.
[14] Doc. #1-1 at 3 (¶ 3).

collect a debt that you owe Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp. Mortgage Pass-Through Certificates series 2007-2" and that attaches a recent mortgage billing statement issued by SPS.[15]

Count One of Speer's complaint seeks a judgment quieting title under Conn. Gen. Stat. § 47-31 and a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, regarding who owns the mortgage, who holds the note, and whether the mortgage and lien are valid.[16] Count Two alleges that MERS and SPS violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b *et seq*., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*—MERS by not notifying Speer of the mortgage's assignment, and SPS by not adequately responding to Speer's 33 QWRs.[17] Count Three alleges that MERS violated Conn. Gen. Stat. § 35-1(a) by using a trade name when it assigned Speer's mortgage to Deutsche Bank in 2009, and that she is thus entitled to damages under CUTPA.[18]

Speer initially filed this action in the Connecticut Superior Court. The defendants removed the case to federal court and have now filed a joint motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[19]

---

[15] Doc. #15-6 at 2–6; *see also* Doc. #1-1 at 4 (¶ 8) (allegations of complaint that "[p]ost-QWR, Defendant Select Portfolio Servicing referred the matter to Bendett & McHugh PC, who sought to collect the debt alleged, and did so without responding to the QWR").

[16] Doc. #1-1 at 2 (¶ 1), 6 (¶¶ A–C).

[17] *Id.* at 6–7 (¶¶ 14–16). Count Two's heading reads "For Unfair Trade Practices (Mortgage Electronic Registration Systems, Inc., CGS §42-110G)." *Id.* at 6 (capitalization altered). But the body of Count Two alleges that SPS and MERS violated the Real Estate Settlement Procedures Act ("RESPA"). *Id.* at 6–7 (¶¶ 14–16). Count Three's heading reads "Real Estate Settlement Procedures Act (Select Portfolio Servicing, Inc)." *Id.* at 7 (capitalization altered). But the body of Count Three alleges that MERS violated Conn. Gen. Stat. § 35-1(a). *Id.* at 7–8 (¶¶ 14–18). The defendants posit that Speer "inadvertently transposed the captions for Counts Two and Three." Doc. #15-1 at 2 n.2. In her opposition to the defendants' motion to dismiss, Speer appears to assert that Count Two alleges violations of CUTPA *and* RESPA, but acknowledges that Count Three's heading is a "scrivener's error." Doc. #17 at 8–9, 12. For completeness's sake, I will read Count Two to allege claims under both CUTPA and RESPA.

[18] Doc. #1-1 at 7 (¶¶ 14–16) (citing Conn. Gen. Stat. § 35-1(a); then citing Conn. Gen. Stat. § 42-110b)).

[19] Doc. #1; Doc. #15.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[20] This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.*

The Court must give a complaint by a *pro se* plaintiff a liberal construction and interpret it to raise the strongest grounds for relief that its allegations suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid.*

Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). A complaint that makes a threadbare recital of the elements of a cause of action without including supporting factual allegations does not establish plausible grounds for relief. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also consider a document not incorporated by reference if the complaint "relies

---

[20] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

heavily upon its terms and effect, thereby rendering the document integral to the complaint," as long as it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Ibid.* "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ibid.* In addition, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

A court may dismiss a claim or complaint with prejudice or without prejudice. A court should ordinarily grant leave to a *pro se* plaintiff to file an amended complaint at least once unless it is apparent that the defect warranting dismissal of a claim is of such a nature that it would be futile for the plaintiff to attempt to file an amended complaint. *See Weir v. City of New York*, 2023 WL 3001136, at *2 (2d Cir. 2023) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

### *Prior pending action doctrine*

The defendants seek dismissal under the prior pending action doctrine, arguing that this case should be dismissed because it was filed in state court after Deutsche Bank had already filed a state court foreclosure action with respect to the property at 391 Deepwood Drive.[21] Under the prior pending action doctrine, "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Curcio v. Hartford Fin. Servs. Grp.*, 472 F. Supp. 2d 239, 243 (D. Conn. 2007) (quoting *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991)).

---

[21] Doc. #15-1 at 11–13; *see* Doc. #1-5 at 2–9 (state court foreclosure complaint).

But the prior pending action doctrine presupposes that the two lawsuits have been filed in the same court or court system. By contrast, if one case has been filed in state court and another case filed in federal court, then the pending action doctrine does not apply, because "[g]enerally as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Thus, multiple federal courts have declined to apply the prior pending action doctrine on the basis of a prior pending action that was filed in state court. *See Lafont v. Phillip*, 2022 WL 2132992, at *2 (E.D.N.Y. 2022); *AM Broadband, LLC v. First Fin. Ins. Co.*, 2009 WL 353493, at *2 (D. Conn. 2009); *Cupe v. Lantz,* 470 F. Supp. 2d 128, 132 (D. Conn. 2007). I agree with these decisions and therefore decline to dismiss Speer's complaint based on the prior pending action doctrine.

### Count One - quiet title and declaratory judgment

Count One seeks a judgment quieting title under Conn. Gen. Stat. § 47-31 and a declaratory judgment regarding who owns the mortgage, who holds the note, and whether the mortgage and lien are valid. According to Speer, both SPS and Deutsche Bank "claim to be owed payments and to be the Holder of the Note," and both "assert[] the right to foreclose" on her home.[22]

As to Speer's quiet-title claim, the quiet-title statute makes clear that it applies only if a plaintiff shows that a defendant has claimed title or an interest in the property that is *adverse* to the plaintiff. *See* Conn. Gen. Stat. § 47-31(a).[23] Thus, "an action for quiet title may only be

---

[22] Doc. #1-1 at 2–3 (¶¶ 2–3).

[23] The statute provides in relevant part: "(a) An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the

maintained against defendants who assert an interest in the property that is *adverse* to the plaintiff's interest." *Smulley v. Webster Fin. Corp.*, 2016 WL 3211807, at *2 (D. Conn. 2016). Here, however, none of the defendants disputes that Speer is presently the owner of the property.[24] Speer does not raise a dispute about who *owns* the property but who has the right to *foreclose* on the property. Yet as Speer well knows from her recent litigation before Judge Underhill involving foreclosure of a different property, a quiet title action cannot proceed because "[a]ll relevant parties agree that Ms. Speer is the owner of the property," and "the allegations in the complaint boil down to uncertainty over who holds the mortgage." *Speer v. U.S. Nat'l Bank*, 2023 WL 2573312, at *4–5 (D. Conn. 2023); *see also Smulley*, 2016 WL 3211807, at *2 (dismissing quiet title claim when "[a]ll parties agree that plaintiff is the owner of the property, and that at least one of the defendants is entitled to future mortgage payments from plaintiff").

To be sure, Speer's interests are "adverse" to Deutsche Bank in the sense that Deutsche Bank is a mortgagee and has filed mortgage foreclosure proceedings against the property. But the quiet-title statute was not intended as an alternative or antidote to mortgage foreclosure proceedings. As the Connecticut Supreme Court explained more than a century ago, the quiet-title statute was intended to be a statutory equitable action of last resort for a plaintiff to settle uncertainty about her right of ownership to property where there is no other remedy at law or equity that is available. *See Foote v. Brown*, 78 Conn. 369, 376–77 (Conn. 1905) (noting that quiet-title statute applies where plaintiff "had no adequate remedy at law or in equity for the

---

title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property." Conn. Gen. Stat. § 47-31(a).

[24] *See* Doc. #1-1 at 2 (¶ 1) ("The Plaintiff is the Record Owner of real property known as 391 Deepwood Drive in Lebanon, Connecticut."); Doc. #15-1 at 11 ("[I]t is undisputed that Plaintiff – at present – is still the owner of the Property.").

redress of that damage as a legal injury" and "the judicial settlement of which the plaintiff cannot compel except through the statutory action"); *see also Lake Garda Imp. Ass'n v. Battistoni*, 155 Conn. 287, 293 (1967) (citing *Foote v. Brown* concerning "the remedy provided by § 47-31 of the General Statutes" and that "[t]he procedure in an action to settle the title to land under the statute has been long and clearly established"); *cf. Patrick v. 111 Clearview Dr, LLC*, 2022 WL 1049118, at *4 (Conn. Super. Ct. 2022) (quiet-title action not available to challenge foreclosure judgment); *Vossbrinck v. Accredited Home Lenders, Inc*., 2016 WL 3266384, at *3 (Conn. Super. Ct. 2016) (same).[25] Here, to the extent that the foreclosure action may eventually result in termination of Speer's claim of ownership in the property, she will have an opportunity to assert her defenses in the foreclosure action and without the necessity of a parallel quiet-title action.

Speer's claim under the Declaratory Judgment Act falls short for similar reasons. To obtain a declaratory judgment, the facts alleged must show "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Admiral Ins. Co. v. Niagara Transformer Corp*., 57 F.4th 85, 92 (2d Cir. 2023). But here there is no plausible dispute about who is the holder of the note and who may seek to enforce its terms. Deutsche Bank is holder of the note and mortgagee and in that capacity has filed a state court action for foreclosure.[26] SPS is no more than a loan

---

[25] *Foote* concerned § 4053 of the General Statutes of 1902, which has since been amended and recodified at Conn. Gen. Stat. § 47-31. The statutes do not materially differ. *Compare* Conn. Gen. Stat. § 4053 (1902) (providing that "an action may be brought by any person claiming title to or any interest in real property against any person or persons who claim to own the same… or to have any interest in the same or any lien or incumbrance thereon adverse to the plaintiff for the purpose of determining such adverse estate, interest or claim and to clear up all doubts and disputes and to quiet and settle the title to the same," quoted in *Cahill v. Cahill*, 57 A. 284, 285 (Conn. 1904)), *with* Conn. Gen. Stat. § 47-31(a), *supra* note 23.

[26] Doc. #1-5 at 2–9 (state court foreclosure complaint); Doc. #15-4 (assignment of mortgage).

servicer for Deutsche Bank.[27] And MERS has long been out of the picture, having assigned the mortgage to Deutsche Bank more than a decade ago in 2009.[28]

Speer's allegations do not plausibly contradict these facts, and therefore she fails to show that there is any substantial controversy with respect to who holds the note and who as mortgagee has the right to seek foreclosure against her. *See Speer*, 2023 WL 2573312, at *4 (rejecting similar claim by Speer for relief under the Declaratory Judgment Act where, notwithstanding Speer's allegation that there were two parties "separately claim[ing] that they hold a mortgage on the property, a basic inspection of the land records shows no such dispute" and that "the complaint, coupled with the documents incorporated therein, do not reveal the existence of a substantial dispute that would warrant the issuance of declaratory judgment").

In short, Speer has not alleged facts sufficient to sustain a quiet-title claim or a claim for relief under the Declaratory Judgment Act. And it is apparent that it would be futile for Speer to amend this claim. Accordingly, I will grant with prejudice the defendants' motion to dismiss Count One of the complaint.

### Count Two – RESPA and CUTPA claims against MERS

Speer alleges in part that MERS violated RESPA and CUTPA because it did not notify her of the mortgage's assignment. RESPA provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). A "servicer" is "the person responsible for servicing of a loan," and "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of

---

[27] Doc. #15-5 at 2 (SPS letter to Speer of December 22, 2022 advising that it is "the mortgage servicer on the above referenced account" and that "SPS has referred your account for legal action").
[28] Doc. #15-4.

principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(2), (i)(3).

Speer does not allege that that there was any assignment, sale, or transfer of the *servicing* of her loan. Rather, she alleges that she was never notified of MERS's assignment of the mortgage itself. Speer thus fails to state a claim under RESPA § 2605(b)(1).

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). A CUTPA claim has four elements: "that the defendant has (1) engaged in unfair methods of competition or unfair or deceptive acts or practices (2) in the conduct of any trade or commerce, (3) resulting in (4) an ascertainable loss of money or property, real or personal, by the plaintiff." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 257 A.3d 874, 889 (Conn. 2021).

Speer's CUTPA claim depends on her allegation that MERS violated RESPA, but because her RESPA claim fails, so too must her derivative CUTPA claim. *See Lops v. YouTube, LLC*, 2023 WL 2349597, at *5 (D. Conn. 2023) (dismissing plaintiff's CUTPA claim that was "entirely derivative" of claims that failed as a matter of law); *see also Omni Corp. v. Sonitrol Corp.*, 303 F. App'x 908, 911 (2d Cir. 2008) (when a claim under CUTPA "duplicates" another claim, "rejection of the latter disposes of the former").

Moreover, the statute of limitations for RESPA claims is "3 years … from the date of the occurrence of the violation." 12 U.S.C. § 2614. The same 3-year limitation applies to CUTPA claims. *See* Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."). The complained-of assignment occurred in 2009, which means Speer's 2023 complaint comes more than a decade after RESPA's and CUTPA's statutes of limitations expired.

11

Notwithstanding Speer's claim that these statutes of limitations should run from the date she discovered or realized that the assignment was not valid, these statutes make clear that they run from the date of the occurrence of the violation, not the date when a plaintiff discovers or realizes that there has been a violation. Moreover, notwithstanding Speer's claim that there was a continuing violation by MERS, she has alleged a single transaction involving the assignment of a mortgage, and there are no facts to suggest that there was any continuing violation of her rights by MERS after 2009.

The continuing violation doctrine "provides that when a plaintiff experiences a continuous practice and policy that violates his or her rights, the commencement of the statute of limitations period may be delayed until the last violation." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (*per curiam*). "[T]he continuing violation doctrine is limited to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment—such as hostile work environment claims—and, when the doctrine does apply, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim." *Smith v. City of New York*, 664 F. App'x 45, 47 (2d Cir. 2016).

Speer appears to take issue with MERS's "business model" and alleges that MERS engages in "a pattern of immoral, oppressive and deceptive conduct that harms customers."[29] But she does not explain how these allegations, if true, constitute a continuing practice or policy of violating Speer's rights under RESPA. Accordingly, the continuing violation doctrine does not apply to Speer's RESPA claim against MERS.

As to Speer's CUTPA claim, "the continuing course of conduct doctrine [applies] only where a defendant: '(1) committed an initial wrong upon the plaintiff; (2) owed a continuing

---

[29] Doc. #17 at 9–10.

duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty.'" *Edwards v. McMillen Cap., LLC*, 2022 WL 16984534, at *2 (2d Cir. 2022) (quoting *Witt v. St. Vincent's Med. Ctr.*, 252 Conn. 363, 370 (2000)).[30] Again, Speer has not alleged any facts to suggest that MERS violated CUTPA at all, much less that MERS owed Speer a continuing duty or continually breached that duty.

Nor has Speer alleged facts to suggest that the statute of limitations period should be otherwise subject to equitable tolling. "Equitable tolling is appropriate on a rare occasion where extraordinary circumstances prevented a party from timely performing a required act, and the party acted with reasonable diligence throughout the period he sought to toll." *Ibid*. Speer asserts that MERS's "increasing mystique under which it operates … presents equitable considerations as to the tolling of the statute of limitations."[31] But MERS's alleged mystique is not an extraordinary circumstance, and Speer does not explain how MERS or any extraordinary circumstance prevented her from bringing an action within the 3-year statute of limitations period.

Accordingly, I will dismiss the RESPA and CUTPA claims as alleged against MERS in Count Two. Because it is apparent that it would be futile for Speer to attempt to amend a claim against MERS that is clearly time-barred, I will dismiss Count Two as to MERS with prejudice.

### Count Two – RESPA and CUTPA claims against SPS

Count Two further alleges that SPS violated RESPA and CUTPA by not acknowledging or adequately responding to her 33 QWRs. RESPA requires servicers who receive QWRs from

---

[30] The Connecticut Supreme Court has not determined whether the continuing course of conduct doctrine applies to CUTPA claims. *See Normandy v. Am. Med. Sys., Inc.*, 262 A.3d 698, 711 n.18 (Conn. 2021). *But see Flannery v. Singer Asset Fin. Co., LLC*, 17 A.3d 509, 513–14 (Conn. App. 2011) (holding that the continuing course of conduct doctrine does not apply to CUTPA claims), *aff'd*, 94 A.3d 553 (Conn. 2014). Solely for purposes of this order, I will assume that the continuing course of conduct doctrine applies to CUTPA claims.
[31] Doc. #17 at 9.

borrowers to acknowledge receipt of the correspondence within 5 days. 12 U.S.C.

§ 2605(e)(1)(A). Servicers must provide the borrower with a written explanation or clarification

within 30 days of receipt. *Id.* § 2605(e)(2).

As relevant here, stating a claim under RESPA or CUTPA requires the plaintiff to allege

that the defendant's allegedly wrongful conduct proximately caused the plaintiff's injury.

RESPA permits individuals to recover actual damages and to recover statutory damages in the

case of a pattern or practice of noncompliance with the requirements of § 2605. *See* 12 U.S.C.

§ 2605(f)(1). Speer does not allege that SPS engaged in a pattern or practice of noncompliance,

and "a plaintiff seeking actual damages under § 2605 must allege that the damages were

proximately caused by the defendant's violation of RESPA." *Tanasi v. CitiMortgage, Inc.*, 257

F. Supp. 3d 232, 269 (D. Conn. 2017). "Simply saying that, for example, the servicer's failure to

respond to a QWR caused damages without specifying how those damages were caused, is not

enough to survive a motion to dismiss." *Ibid*. CUTPA likewise requires that "the purportedly

unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries."

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 288 (Conn. 2019).

Speer does not allege facts in her complaint to show how SPS's alleged failure to

acknowledge or adequately respond to her QWRs proximately caused her to suffer damages.

According to the complaint, she propounded the QWRs because she "sought to ascertain the

actual location of the Original Note and its custodian of record."[32] But she alleges no facts to

show that she was injured or damaged by not knowing the actual location of the original note and

its custodian of record.

---

[32] Doc. #1-1 at 4 (¶ 7).

"The courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264–65 (S.D.N.Y. 2017)); *see also Bonadio v. PHH Mortg. Corp.*, 2014 WL 522784, at *6 (S.D.N.Y. 2014) (dismissing RESPA claim when the plaintiff did not explain how his damages "were caused *specifically* by defendant's alleged § 2605 violations" and "offer[ed] only the conclusory assertion that he suffered actual damages as a result of defendant's failure to comply with RESPA"); *Roth v. CitiMortgage Inc.*, 2013 WL 5205775, at *8 (E.D.N.Y. 2013) (dismissing RESPA claim when "plaintiff has failed to allege any facts to support the assertion that the alleged RESPA violations proximately caused her emotional distress and harm"), *aff'd*, 756 F.3d 178 (2d Cir. 2014) (*per curiam*).

Courts also dismiss CUTPA claims absent plausible allegations of an injury and ascertainable loss. *See Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 190 (2d Cir. 2020) (describing "the ascertainable loss requirement" as a "threshold barrier" to bringing a CUTPA claim); *ZeeBaaS, LLC v. Koelewyn*, 2012 WL 2327693, at *8 (D. Conn. 2012) (dismissing CUTPA claim when "Plaintiffs have also failed to allege that [defendant's] conduct was the proximate cause of harm to them as required under CUTPA").

Accordingly, I will dismiss the RESPA and CUTPA claims as alleged against SPS in Count Two. Because it is not clear to me that it would be futile for Speer to amend her claim in Count Two as to SPS, I will dismiss Count Two without prejudice.

### Count Three – trade name violation under Conn. Gen. Stat. § 35-1(a)

Count Three alleges that MERS violated Conn. Gen. Stat. § 35-1(a) by using a trade name when it assigned Speer's mortgage to Deutsche Bank in 2009, and that she is thus entitled to damages under CUTPA. In particular, Speer alleges that § 35-1(a) prohibits the use of a trade

name by corporations that are dissolved unless the name is recorded with the Secretary of State, and that MERS was dissolved in 2005.[33]

Section 35-1(a) provides that

> No person … shall conduct or transact business in this state, under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the person or persons conducting or transacting such business, unless there has been filed, … a certificate stating the name under which such business is or is to be conducted or transacted and … in the case of a corporation or limited liability company using such an assumed name, its business name, business identification number and principal office address as reflected on the records of the Secretary of the State.

Failure to comply with § 35-1(a) "shall be deemed to be an unfair or deceptive trade practice under subsection (a) of section 42-110b [*i.e.*, CUTPA]." *Ibid*.

Setting aside whether Speer's allegations, taken as true, make out a violation of § 35-1(a), the facts alleged concern MERS's assignment of Speer's mortgage in 2009. Thus, CUTPA's 3-year statute of limitations bars Count Three for the same reasons it bars Count Two's allegations relating to MERS's assignment of Speer's mortgage in 2009. Moreover, CUTPA requires the plaintiff to allege that the defendant's wrongful conduct proximately caused the plaintiff's injury, *see Soto*, 202 A.3d at 288, but Speer does not explain how MERS's allegedly improper use of a trade name did so. Finally, to state a claim under CUTPA, a plaintiff must allege that she suffered an "ascertainable loss of money or property." *Kent Literary Club*, 257 A.3d at 889. Speer's conclusory allegation that she "suffered an ascertainable loss" is not enough to satisfy this requirement.[34] *See Speer*, 2023 WL 2573312, at *7.

---

[33] *Id.* at 14 (¶¶ 14–16).
[34] *Ibid.* (¶ 17).

Accordingly, I will grant the defendants' motion to dismiss Count Three. Because it is apparent that any attempt to amend Count Three would be futile, I will dismiss Count Three with prejudice.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss (Doc. #15). Speer may file an amended complaint within 30 days as to her claim in Count Two against SPS (but not as to those claims that have been denied with prejudice) and as to any additional claims against one or more of the defendants if Speer has good faith grounds to allege such claims. The Clerk of Court shall close this case subject to re-opening if Speer decides to timely file an amended complaint. Finally, the Court DENIES AS MOOT the defendants' motion to stay (Doc. #16) in light of the Court's granting of the motion to dismiss.

It is so ordered.

Dated at New Haven this 28th day of July 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge